OPINION OF THE COURT
Joel L. Blumenfeld, J.
The issue presented in this case is whether People v Sierra (45 NY2d 56 [1978]) precludes this court from giving the jury the instruction modeled on 1 CJI(NY) 9.65 that the temporary and lawful possession of one eighth of an ounce of cocaine is a *681 defense to criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]).
In determining whether to charge a particular defense, the court is required to view the evidence adduced at trial in a light most favorable to the defendant (see People v Butts, 72 NY2d 746, 750 [1988]). Those facts are that he was employed by Primo Security to work as a bouncer at a bar, was told to confiscate illegal contraband before anyone was allowed inside, and that their policy was that if anything was confiscated, he should contact Primo who would turn in the contraband to the police. On the night in question, the defendant confiscated 14 packets of cocaine from a patron on his way into the bar. Prior to his having an opportunity to contact Primo, the police responded to noise outside the bar at which time the defendant gave the police the 14 packets of cocaine.
The foundation for the common-law defense originates with the possession of a weapon. In People v Persce (204 NY 397 [1912]), the defendant possessed a “slungshot.” The Court, in dicta, recognized that the possession of a weapon as part of a criminal act did not mean mere possession. In Persce, the Court mentioned two exceptions: (1) “legal ownership of a weapon in a collection of curious and interesting objects,” and (2) possession “which might result temporarily and incidentally from the performance of some lawful act, as disarming a wrongful possessor” (Persce, id. at 402).
The common-law defense was followed in People v La Pella (272 NY 81 [1936]), in which the defendant found a firearm in a public toilet, put it in his pocket and intended to give it to the police after meeting his wife on a nearby street corner. Apparently, some 20 minutes after picking up the firearm, the defendant saw a detective and without any request, gave the detective the firearm. The Court held that it was error for the trial court not to instruct the jury as to the common-law defense: “that if this defendant found this pistol as claimed by him, and if he thereafter took this gun for the purpose of delivering it to an officer or to a police station, that he was performing a civic duty, and that such possession was not the possession intended by Section 1897” (id. at 83 [internal quotation marks omitted]).
“The ‘possession’ forbidden by the statute ‘should not be construed to mean a possession * * * which might result temporarily and incidentally from the performance of some lawful act’ (People v Persce, 204 NY 397, 402), particularly when, as is here *682 claimed, the act was designed to meet the social policy of the law” (id.).
It is important to note that the Court emphasized the social policy of such a common-law defense, that is, to encourage people to turn in illegal weapons found. This defense exists because as a matter of policy certain types of conduct are not deemed criminal (People v Almodovar, 62 NY2d 126 [1984], citing La Pella, 272 NY 81 [1936]; Penal Law § 265.20; People v Williams, 50 NY2d 1043 [1980] [emphasis added]).
In 1961, the First Department reversed a conviction where the trial court failed to instruct the jury that the meaning of “possession” “does not turn upon a physical handling of the prohibited weapon alone” (People v Furey, 13 AD2d 412, 415 [1st Dept 1961]).
In 1980, the Court of Appeals revisited this common-law defense in People v Williams (50 NY2d 1043 [1980]). Although holding that the innocent possession charge was not necessary under the facts of that case, it recognized the need for trial courts to instruct the jury, when there is proof in the record showing a legal excuse, as to the common-law defense. Again, the Court emphasizing the social policy aspects of this common-law defense: “[w]hile it would be unwise to detail here those instances in which an innocent possession charge might be warranted, it suffices to note that the underlying purpose of the charge is to foster a civic duty on the part of citizens to surrender dangerous weapons to the police (People v La Pella, supra)” (People v Williams, 50 NY2d at 1045). “[T]he plain import of the innocent possession defense has long been to allow the jury to temper the seemingly absolute language of the statute with a pragmatic assessment of the circumstances in order to determine whether the defendant’s conduct was truly culpable” (People v Williams, 50 NY2d at 1048 [Fuchsberg, J., dissenting]).
In People v Legett (140 AD2d 1 [1st Dept 1988]), the First Department held that the common-law defense of innocent possession was required, even where it was not requested, where defendant’s testimony presented evidence of (1) disarming the aggressor of a package with which the aggressor threatened the defendant, and (2) surrendering the contents of the package to the police almost immediately. It should be noted that the dissent points to the fact that the defendant testified that he may have possessed the gun for up to three hours before the police arrived (id. at 5 [Asch, J., dissenting]).
In the cases where the court allowed the temporary and lawful possession defense charge the defendant’s behavior was a *683 part of an innocent act (e.g., finding the gun in the public toilet [La Pella, 272 NY 81 [1936]). This innocent act absent the common-law defense of temporary and lawful possession, would result in the conviction of the possessory crime unless the jury decided to nullify the law. This defense came about in part to prevent a conviction for an innocent act. This was accomplished by refusing to define possession so strictly as to criminalize innocent temporary and lawful possession.
On the other hand, where the possession did not come about in an innocent fashion or where the possession was prolonged and no longer temporary, the courts have refused to apply the common-law defense (see e.g. People v Williams, 50 NY2d 1043, 1045 [1980] [“Upon discovering the gun, defendant removed the weapon and secreted it in a new hiding place, removing it when it suited his own purpose and handling it in a manner which may be charitably characterized as reckless”]; People v Snyder, 73 NY2d 900 [1989] [defendant held gun overnight while deciding what to do with it]).
While the foundation for this defense is common law, it is somewhat codified in Penal Law § 265.20 (a) (1) (f) which allows for people to possess weapons upon voluntarily surrendering them to the proper law enforcement authorities. Nevertheless, the temporary and lawful possession defense goes beyond that statutory law.
The People do not dispute the existence of this common-law defense with respect to weapons, rather they argue against applying it to other possessory crimes such as criminal possession of a controlled substance. In oral argument during the preliminaries of this trial, the People argued that People v Sierra (45 NY2d 56 [1978]) stands for the proposition that the court cannot instruct the jury as to the temporary and lawful possession defense. In Sierra, the defendant sold cocaine to an undercover police officer. His defense was that he was acting as an agent for the officer. The trial court instructed the jury on the agency defense for the sale count, but refused to do so for the possessory count. However, Sierra is clearly distinguishable from the temporary and lawful possession of a weapon cases since the act in Sierra was not an innocent act (such as finding the contraband and turning it in to the police) and it would run contrary to public policy concerns. The defendant in Sierra was in no way acting as a good citizen. At the time he was assisting the buyer, he had no idea that the buyer was a police officer.
The People seem to be taking an absolutist position to the temporary and innocent possession of a controlled substance. *684 This position makes little sense in real life and runs contrary to public policy considerations. It also allows for certain factual situations to be criminalized where it is clear that the state would not want to punish people doing the right thing. While many real life situations come to mind, three intriguing ones came up in oral argument.
First, if a parent discovers illegal drugs in their child’s bedroom and decided to confront the child with these drugs— just like we see on the public service announcements on television — the parent would be guilty of a degree of criminal possession of a controlled substance under the People’s absolutist position.
Second, if a teacher, dean, guidance counselor or principal in a school came into possession of a controlled substance by either taking it from a student or finding it in a desk, open locker, the hall or any other part of the school, the teacher, dean, guidance counselor or principal would be guilty of a degree of criminal possession of a controlled substance under the People’s absolutist position.
The third example might be the most intriguing, especially in drug cases. During the trial, like other drugs cases, after the People entered into evidence the 14 packets of cocaine, they published them to the jury. The jurors, one-by-one, took the cocaine into their hands and looked at it and then passed them to the next juror. The last juror returned the 14 packets to the court. Under this situation, each juror would be guilty of a degree of criminal possession of a controlled substance under the People’s absolutist position.
The same policy consideration for weapons are equally valid for controlled substances. We want people, not just law enforcement, to confiscate illegal drugs from their children and students and turn them in to the proper authorities. We want people who find drugs on the street to pick them up and turn them in to the proper authorities. We want jurors to be able to examine evidence without fear of prosecution. It makes no sense whatsoever to criminalize this type of behavior. It runs contrary to public policy.
Regardless, the question remains whether this common-law defense is applicable to the various degrees of criminal possession of a controlled substance. The answer is found not in case law, but statutory law.
Generally, a person is guilty of criminal possession of a controlled substance when that person knowingly and unlawfully *685 possesses a controlled substance. Unlike most other possessory crimes where knowing possession of the contraband is enough, criminal possession of a controlled substance requires that the possession be both knowing and unlawful. In most cases, the unlawful element is not at issue. The standard charge in the Criminal Jury Instructions (CJI2d[NY] Penal Law § 220.09) for this element states: “A person unlawfully possesses [the controlled substance] when that person has no legal right to possess it. Under our law, with certain exceptions not applicable here, a person has no legal right to possess [the controlled substance].”
Unlawfulness is not defined in the Penal Law, but rather Public Health Law article 33. Among the people exempted from criminal possession are those who immediately come to mind: health care professionals who possess it in good faith (Public Health Law § 3331); law enforcement officers (Public Health Law § 3305); and persons who transport and store these substances for the legal dispensers (Public Health Law § 3305). However, not explicitly in this article are parents, teachers, deans, guidance counselors, principals and jurors who are doing what we consider their civic duty. The answer is found implicitly in subdivision (1) of Public Health Law § 3305: “The provisions * * * restricting the possession * * * of controlled substances * * * shall not apply: * * * (c) to temporary incidental possession * * * by persons whose possession is for the purpose of aiding public officers in performing their official duties * * *.” Therefore, the basis for the temporary and lawful possession defense, as it applies in the instant case, is found in subdivision (1) of Public Health Law § 3305. Accordingly, the unlawfulness element of the criminal possession of a controlled substance charge requires the People to prove beyond a reasonable doubt that the defendant’s possession was not in violation of this provision.
It must be noted that like the common-law defense, it need only be charged where the facts of the case warrant it.
Accordingly, the jury will be instructed as follows:
(1) The element of unlawful possession will be defined as:
“A person unlawfully possesses cocaine when that person has no legal right to possess it. Under Public Health Law § 3305, insofar as it applies to this case, ‘possession of cocaine is not unlawful if it is temporary incidental possession by persons whose possession is for the purpose of aiding public officers in performing their official duties.’ ”
*686 (2) After the substantive law charge, the jury will be instructed on the temporary and lawful possession common-law defense which has been modified from 1 CJI(NY) 9.65.* Again, it will be up to the jury to decide whether the defendant was telling the truth and whether the defense applies.

 Temporary Lawful Possession of a Controlled Substance Charge (Modeled on 1 CJI[NY] 9.65):
“As you are now aware, the defense in this case is that defendant’s possession of the controlled substance, cocaine, was temporary and lawful.
“The People are required to prove beyond a reasonable doubt that the possession of the controlled substance was unlawful. ‘Possession,’ an essential element of the offense charged, does not turn upon the physical handling of the controlled substance alone. The law recognizes the possession of a controlled substance, if temporary and for a lawful purpose, is lawful and not punishable as a crime.
“A person who recently finds a controlled substance and thus possesses it temporarily, with no intention to retain it, but with the intention of promptly turning it over to a lawful authority, is not guilty of criminal possession. Such possession, if temporary, is lawful.
“Whether the defendant’s possession was temporary and lawful is a question of fact for you, the jury. Among the facts you may wish to consider are: the length of time the controlled substance remained in the possession of the defendant, the opportunity the defendant had to dispose of the controlled substance in a lawful manner, and whether, after the defendant obtained the controlled substance, he engaged in any act or conduct showing an intent to possess the controlled substance unlawfully.
“Bear in mind that the defendant has no burden to prove that his possession was temporary and lawful. To the contrary, the burden of proof is upon the People to establish beyond a reasonable doubt that the defendant’s possession of a controlled substance was in this case unlawful and not temporary and lawful.”