Jerry L. FREDLINE, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000281–MR.

Supreme Court of Kentucky.

Dec. 20, 2007.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Bryan D. Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

### MEMORANDUM OPINION
### OF THE COURT

The Fayette Circuit Court convicted Appellant, Jerry L. Fredline, of one count of murder and sentenced him to twenty-five years' imprisonment. He now appeals the conviction as a matter of right, raising four issues for review. Finding no error, we affirm.

### Background

Appellant was living with his friends, Bill and Suzanne Elgin, in Lexington because he was splitting with his wife. Appellant was having difficulty finding a job in Lexington, and often spent the afternoons with Mr. Elgin, who was disabled as a result of two prior strokes. The pair often drank together in the evenings, and frequently engaged in petty little arguments. Mrs. Elgin described the duo as "two older guys who were bored."

On the evening of May 24, 2005, Appellant and Mr. Elgin were drinking whiskey at the kitchen table. Mrs. Elgin excused herself and went to sleep on the living room couch. Around 1:00 a.m., she heard a loud bang. Moments later, Mr. Elgin stumbled from the kitchen, clutching his side. He said, "He shot me in the side." While yelling expletives, Appellant then fired two more shots that hit Mr. Elgin in the head, killing him.

Mrs. Elgin looked up to see Appellant with his hands in the air. He apologized to Mrs. Elgin, and then ran out of the house. He returned momentarily and demanded that she move her car. However, Appellant ran out of the house again and used his own vehicle to push her car out of the driveway. Mrs. Elgin locked the house and called 911.

According to Appellant's later statements to police, he drove around Lexington for about an hour. Eventually, he stopped at a gas station and called 911. He told the dispatcher that the police were probably looking for him because he had shot someone. He gave the dispatcher the Elgins' address. The police arrived and arrested him.

Appellant was taken to police headquarters and interviewed. The interviewing officers testified that Appellant did not appear intoxicated. Appellant told the officers that he and Mr. Elgin had been talking and got into an argument. According to Appellant, Mr. Elgin had slapped him across the face. He told the officers that he remembered the noise of gunfire, but that he did not recall firing the gun or even seeing a firearm. He could not recall any additional details about the shooting.

Following a three-day trial, Appellant was convicted of murder. The jury recommended a sentence of twenty-five years' imprisonment, which the trial court adopted. This appeal followed.

## Motion for a Continuance

█ In his first assignment of error, Appellant argues that the trial court improperly denied his motion for a continuance. A brief recitation of the procedural history of the trial is necessary for consideration of this issue.

The trial commenced on January 30, 2006, a Monday. On the previous Friday morning, the Commonwealth filed four motions in limine as follows: (1) a motion to prohibit defense counsel from stating in opening remarks that Dr. Douglas Ruth, a forensic psychiatrist for the defense, would testify that Appellant was acting under an extreme emotional disturbance (EED); (2) a motion to prohibit Dr. Ruth from so testifying; (3) a motion to exclude any testimony by Dr. Ruth about the triggering event of the EED; and (4) a motion to prohibit Appellant from introducing his own statement to police given at the time of his arrest. The trial court harshly criticized the Commonwealth for filing substantive motions so close to the start of trial. Defense counsel also requested a continuance, explaining to the trial court that it was not his personal desire to continue the trial, but that Appellant wanted the delay. According to defense counsel, Appellant feared that he would have to testify in his own defense if the motions in limine were granted. The trial court deferred ruling on any of the motions until the day of trial.

On Monday morning, defense counsel explained to the trial court that he needed a continuance because it was not Appellant's desire to testify. Defense counsel went on to explain that if the court granted the motion to suppress Appellant's statement to the police, then Appellant would be compelled to testify in order to present evidence of his supposed EED.

According to defense counsel, this would be a "fundamental change in trial strategy." Nonetheless, when specifically asked by the trial court, defense counsel announced ready for trial. The trial court deferred ruling until after voir dire. Eventually, the motion was denied. It should also be noted that the motion to suppress was likewise denied, and Appellant's statement was admitted in its entirety.

■ Appellant argues that a continuance was warranted. RCr 9.04 states that a continuance may be granted upon "sufficient cause shown." The ultimate decision to grant a continuance lies within the sound discretion of the trial court and a conviction will only be overturned upon a showing of an abuse of that discretion. *Hudson v. Commonwealth*, 202 S.W.3d 17, 22 (Ky.2006). The decision whether to grant a continuance necessarily rests on the particular facts and circumstances of each trial. id-Factors to be considered by the trial court in making this determination include the length of the delay, previous continuances, inconvenience to the parties and the court, purpose of the delay, availability of other competent counsel, complexity of the case, and whether undue prejudice will result if the continuance is not granted. *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky.1991) *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky.2001).

We sympathize with Appellant that the Commonwealth's late motions inconvenienced both defense counsel and the trial court. However, we find no abuse of discretion in the trial court's decision to proceed with the trial. On Monday morning when the motion was argued, a jury pool was assembled, prepared for voir dire, as was the Commonwealth. Despite the request for a continuance, defense counsel did not press the issue and, in fact, announced ready for trial. Also, it is apparent from a review of the record that the trial court was not prepared to rule on the motion to suppress, and that the issue of a continuance would be taken up if, and when, defense counsel was compelled to change its strategy. In other words, there was no purpose in granting a continuance when the trial court had not yet determined if the statement would be excluded.

Most important, however, is that Appellant suffered no identifiable prejudice by the denial of his request for a continuance. Defense counsel's stated purpose for the delay—to change his trial strategy in the event Appellant's statement to police was suppressed—never came to fruition. The trial court reserved ruling on the issue until after the trial had progressed somewhat and other testimony was developed. Defense counsel, by announcing ready for trial despite the request for a delay, implicitly agreed to this plan. Ultimately, the entire statement was admitted, and Appellant was not placed in the position where his testimony was essential to his defense. Thus, Appellant cannot identify any undue prejudice by the trial court's refusal to continue the trial. *Dishman v. Commonwealth*, 906 S.W.2d 335, 340 (Ky. 1995). In light of these circumstances, the trial court's ruling cannot be deemed unfair, unreasonable, or arbitrary and, therefore, no abuse of discretion occurred. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

### Limitation on Expert Testimony

Appellant next asserts that the trial court erred in prohibiting Dr. Ruth from testifying that he was acting under an EED when he shot Mr. Elgin. As explained above, the Commonwealth filed a motion in limine to preclude such testimony by Dr. Ruth. The trial court granted the motion, but stated that Dr. Ruth would

be permitted to testify about EED in general, and about what happens to an individual under such circumstances.

However, after the Commonwealth closed its case, defense counsel informed the trial court that Dr. Ruth would not be called. He explained that Dr. Ruth's testimony would "open the door" to cross-examination regarding Appellant's prior bad acts, which included two prior convictions, both involving serious assaultive behavior, and a prior assault of his ex-wife. The trial court inquired whether the testimony could be limited in such a way as to avoid opening the door to the prior convictions. Defense counsel responded that all of Dr. Ruth's proposed testimony was "too interrelated." Upon this information, and realizing the import of defense counsel's strategic decision, the trial court called Appellant himself to the stand to explain the situation. After time was given for Appellant to consult with his attorney, defense counsel announced that Dr. Ruth would not be called to the stand.

Appellant cannot now claim, on appeal, that Dr. Ruth's testimony was improperly limited by the trial court's ruling on the motion in limine, forcing him to exclude Dr. Ruth all together. It is plainly evident from the record that the decision not to call Dr. Ruth was based on the fact that his testimony would open the door to very damaging cross-examination concerning prior bad acts. This conclusion is highlighted by the fact that no attempt was made to introduce Dr. Ruth's excluded testimony by way of avowal. *Commonwealth v. Ferrell*, 17 S.W.3d 520, 523–24 (Ky.2000). There was no error.

### Instruction on Voluntary Intoxication

■ Appellant argues that he was entitled to a jury instruction on the defense of voluntary intoxication. A trial court is required to instruct the jury on every theory of the case that is reasonably deducible from the evidence. *Manning v. Commonwealth*, 23 S.W.3d 610, 614 (Ky.2000). This applies to lesser-included offenses as well as affirmative defenses: "[T]he entitlement to an affirmative instruction is dependant upon the introduction of some evidence justifying a reasonable inference of the existence of a defense." *Grimes v. McAnulty*, 957 S.W.2d 223, 226 (Ky.1997).

■ KRS 501.080(1) states that voluntary intoxication is a defense to a criminal charge if it "negatives the existence of an element of the offense." We have interpreted the statute to mean that the defense is "justified only where there is evidence reasonably sufficient to prove that the defendant was so drunk that he did not know what he was doing." *Rogers v. Commonwealth*, 86 S.W.3d 29, 44 (Ky.2002) *quoting Meadows v. Commonwealth*, 550 S.W.2d 511, 513 (Ky.1977). If, from the evidence presented, a jury could reasonably conclude that the defendant was so intoxicated that he could not have formed the requisite mens rea for the offense, a voluntary intoxication instruction is warranted. *Nichols v. Commonwealth*, 142 S.W.3d 683, 689 (Ky.2004).

The evidence in this case did not support a voluntary intoxication instruction. In his interview to police, Appellant admitted to drinking the night of Mr. Elgin's death, but also stated that he often drank heavily. The arresting police officer observed that Appellant exhibited no signs that he was under the influence of alcohol. The police officer who took Appellant's statement testified that he smelled alcohol on Appellant's breath but that he did not appear intoxicated. Appellant's own statements to the police also reveal that he clearly remembered the events leading up to the killing and those after, though he denied recollection of the shooting itself. The circumstances of the killing also suggest

that Appellant was not heavily intoxicated. He apologized to Mrs. Elgin before fleeing the house. He returned to request that she move her car. He drove his own vehicle around Lexington without incident for one hour before calling 911. And he gave clear and exact information to the dispatcher about the night's events, his location, and the Elgins' address. By contrast, aside from Appellant's own statement to police that he had been drinking, there was absolutely no evidence presented indicating that Appellant was so intoxicated as to warrant a voluntary intoxication instruction.

In short, "[t]hese are not the actions of a man so intoxicated that he did not know what he was doing." *Soto v. Commonwealth*, 139 S.W.3d 827, 868 (Ky.2004). *Cf. Nichols*, 142 S.W.3d at 688–89 (voluntary intoxication instruction was warranted where defendant told police he was very drunk, he had consumed an extraordinary amount of alcohol, and was acting "wild" and "out of control" at the time of the offense). The trial court did not err in refusing to instruct the jury on the defense of voluntary intoxication.

### Competency Hearing

Appellant's final assertion of error is that the trial court denied him due process of law when it failed to hold a formal competency hearing. The trial court in this case ordered that Appellant be evaluated to determine his competency, and a report was prepared by a physician from Kentucky Correctional Psychiatric Center. Dr. Ruth also conducted a competency evaluation and prepared a report for the court. Both found Appellant competent to stand trial.

On the day of trial, the Commonwealth told the court that the evaluations had been prepared, but that no hearing had been conducted. Defense counsel explained that both physicians agreed that Appellant was competent to stand trial, and stipulated to the reports of both physicians. The trial court then determined that it would rely on the reports, and ultimately found Appellant competent to stand trial.

A competency hearing is required by KRS 504.100(3): "After the filing of a report (or reports), the court shall hold a hearing to determine whether or not the defendant is competent to stand trial." Section 3 of KRS 504.100 is mandatory. *Mills v. Commonwealth*, 996 S.W.2d 473, 486 (Ky.1999). However, this Court has also explained that a formal evidentiary hearing is not always required to satisfy the due process requirements established by KRS 504.100(3):

> We might note that in all cases a full-blown evidentiary hearing with witness testimony, etc., may not always be necessary. In certain instances, judicial economy will dictate that an "abbreviated" hearing should follow. For example, counsel may agree to stipulate to certain evidence, such as a mental health expert's finding of competency, and the trial court could then make a finding of competency based upon those stipulations. We reiterate though, that even if defense counsel insists that competency is not an issue, if the trial court nonetheless has reasonable grounds to believe the defendant is incompetent, it is incumbent that the court hold a formal hearing on the issue.

*Quarels v. Commonwealth*, 142 S.W.3d 73, 83 n. 3 (Ky.2004).

The requirements of KRS 504.100(3) are met when "the Commonwealth and the defendant [are] given an opportunity to present evidence on the issue of competency and an opportunity to cross-examine the psychologist or psychia-

trist who prepared the report." *Gibbs v. Commonwealth*, 208 S.W.3d 848. 853 (Ky. 2006). Here, the trial court was presented with the two competency evaluations and invited both the Commonwealth and Appellant to call witnesses. Defense counsel expressly waived the opportunity to call either expert to the stand, noting that both physicians were "in total agreement." Defense counsel then stipulated to the accuracy of both reports. The Commonwealth likewise declined the opportunity to call witnesses. Thereafter, the trial court reviewed the reports and made specific findings of fact based on the reports.

Under the circumstances of this case, the requirements of KRS 504.100(3) have been satisfied. There was no error.

### Conclusion

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

All sitting. All concur.