2008 UT 61

**STATE of Utah, Plaintiff and Appellee,**

v.

**Curtis John MILLER, Defendant and Appellant.**

No. 20060989.

Supreme Court of Utah.

Aug. 29, 2008.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Linda M. Jones, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Following a jury trial, Curtis Miller ("Miller") was convicted of two counts of felony possession of a controlled substance in violation of Utah Code section 58–37–8(2)(a)(i) (the "possession statute"). Miller seeks to have his conviction reversed and his case remanded for a new trial. He claims that the trial court erred in failing to instruct the jury on his proposed defense of innocent possession. For the reasons detailed below, we remand for a new trial in which Miller will be entitled to an instruction on the defense of innocent possession.

## BACKGROUND

¶ 2 The material facts are not in dispute. Miller works as a general contractor, and in April 2004, he had a crew of about ten men working for him on a basement remodel project. Among the crew were Jason Lemon and Vincent Henderson. On April 10, the crew finished the project and had a party at Miller's house to celebrate. About twenty people, including Lemon and Henderson, came to Miller's home that night.

¶ 3 According to Miller, by 2:00 a.m., only one of Miller's friends, who was asleep on Miller's sofa, remained at his home. Then, at 2:30 a.m., a woman arrived at Miller's door asking if he had called an escort.[1] Miller said, "no," but the woman demanded that he pay her $85.00 for "showing up." Miller refused.

¶ 4 After the woman left, Miller started cleaning up his apartment in preparation for a visit from his grandchildren the next day. Fifteen minutes later, the same woman returned with "two other guys," who were yelling and "kicking the door." After Miller opened the door and told the group he was calling 911, they left. Miller did not call 911 at that time. The men returned shortly thereafter and "were even louder[,] .... [were] kicking [Miller's] door[,]" and "were very threatening, saying that they were going to beat [him] and make him pay." In response to this, Miller called 911 for the first of four times that night.

¶ 5 Sergeant John Beener responded to Miller's first call, checked around the home's exterior, but found no one. Sergeant Beener then entered Miller's home and talked with Miller, who appeared to be "extremely intoxicated, [with] bloodshot, watery eyes, slurred[,] interrupted speech, a lack of comprehension, [and] a loss of balance." Miller told Sergeant Beener about the threats he had received from the escort service. When Sergeant Beener attempted to get more information from Miller, Miller accused Sergeant Beener of being "on the take" from the escort service. Sergeant Beener left Miller's home because he did not consider the issue to be a police matter. He got into his police car and pulled into a parking lot across the street from Miller's home to complete paperwork.

¶ 6 After Sergeant Beener left, Miller began cleaning up again and found a glass pipe

---

1. Jason Lemon testified that while at the party, Vincent Henderson was "really wasted .... [and] excited that he had called this escort ser-vice." He also testified that Henderson "announced it to everybody," but left the party before anyone from the escort service arrived.

and a pill bottle on his coffee table. He recognized the pill bottle as one containing a prescription medication, so he put it in his pants pocket with the intention of later putting it in his medicine cabinet—out of the reach of his grandchildren—and then returning it to its owner. Although Miller did not look at the name on the bottle before placing it in his pocket, he learned after his arrest that it belonged to Henderson. Miller also put the glass pipe in his pants pocket. As Miller was cleaning, the escort service called Miller's home one or two times to demand payment. In response, Miller called 911 the second and third times. Sergeant Beener did not respond to Miller's second and third calls because he "was sitting there staring at the residence" and could see that no one was at Miller's home. When Miller called the fourth time, Sergeant Beener returned to Miller's home and arrested him for abuse of the 911 system and for intoxication.

¶ 7 In a search incident to Miller's arrest, Sergeant Beener found the glass pipe and the prescription bottle with Vincent Henderson's name on it in Miller's pants pocket. The bottle contained four pills of oxycodone, four pills of hydrocodone, and one pill for gastro-intestinal problems.

¶ 8 Sergeant Beener prepared to take Miller to jail and, at Miller's request, went to Miller's bedroom to get Miller's shoes and keys. While Sergeant Beener was in the bedroom, he found "a mirror and a pipe laying out."

¶ 9 Miller was charged with two counts of possession of a controlled substance, both third degree felonies; one count of possession of drug paraphernalia, a class B misdemeanor; emergency reporting abuse, a class B misdemeanor; and intoxication, a class C misdemeanor. In November 2004, Miller was bound over on all charges and was tried to a jury in June 2006.

¶ 10 At the close of Miller's jury trial, the trial court excused the jury, and Miller's counsel proposed that the court give the jury an instruction on the defense of innocent possession. The proposed instruction, which was based on a weapons charge defense, provided that possession was innocent if "(1) the firearm was attained innocently and held with no illicit or illegal purpose, and (2) . . . the possession of the firearm was transitory; that is that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible."

¶ 11 The trial court rejected the proposed instruction, noting that it was "inclined to give the . . . possession instruction just based on the plain language of the statute." Defense counsel objected. The jury found Miller guilty of two counts of possession of a controlled substance and possession of drug paraphernalia but acquitted him of abusing the reporting system and intoxication. The court sentenced Miller to two terms of zero to five years, suspended the terms, and ordered Miller to report to jail to serve 365 days followed by thirty-six months probation.

¶ 12 Miller timely appealed, claiming that the trial court erred in two ways. First, he claims that the court erred in refusing to instruct the jury on his proposed defense of innocent possession of the controlled substances.[2] Miller claims that he was entitled to an instruction on this defense because the evidence supported his claim that "his possession of the drugs was innocent, where he did not take control of the drugs for any illegal purpose; rather, he took possession of the bottle in order to return it to its lawful owner." Second, Miller claims that the trial court erred in refusing to grant his motion for a new trial based on newly discovered evidence. The new evidence Miller argues he has discovered is the testimony of Henderson, which would directly establish Henderson's ownership of the prescription pill bottle found in Miller's pants pocket.[3]

2. Miller has not appealed his conviction for possession of drug paraphernalia; therefore, we limit our discussion and application of the innocent possession defense to Miller's possession of the controlled substances.

3. While Miller was unable to locate Henderson—who is often homeless—to testify at his jury trial,

he did locate Henderson following the trial, and he obtained an affidavit in which Henderson states that he had a prescription for the hydrocodone and oxycodone and that he "forgot to take [his] medication with [him]" when he left the party.

Finally, Miller claims he received ineffective assistance of counsel at his trial. Because we are remanding for a new trial at which Miller will be entitled to an innocent possession defense instruction, we need not reach his argument that he is entitled to a new trial based on newly discovered evidence or his argument that he received ineffective assistance of counsel. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b) (2008).

## STANDARD OF REVIEW

■ ¶ 13 "Whether a jury instruction correctly states the law presents a question of law which we review for correctness." [4]

## ANALYSIS

¶ 14 Our analysis focuses on Utah Code section 58–37–8(2)(a)(i), the possession statute under which Miller was charged.

¶ 15 Miller was charged under a statute that prohibits possession of certain controlled substances, including oxycodone and hydrocodone.[5] Utah Code section 58–37–8(2)(a)(i) provides that a defendant is guilty of the crime of possession if he (1) knowingly and intentionally, (2) possesses, (3) a controlled substance.

■ ¶ 16 Utah's criminal law is statutory.[6] Thus, all criminal defenses "must be grounded in the specific code sections" under which the defendant is charged.[7] The possession statute under which Miller was charged provides an affirmative defense to the crime of possession in only one instance—if the controlled substance "was obtained under a valid prescription or order, directly from a practi-

tioner." [8] Because this possession statute does not provide an explicit affirmative defense of innocent possession, the defense exists only if the statute implicitly includes it. And the State concedes that—at least in some measure—the statute does.

■ ¶ 17 During oral argument, the State was asked how Miller, or any homeowner, could avoid criminal liability if a house guest inadvertently leaves a bottle of controlled substance prescription pills in the homeowner's home. The State responded that a homeowner would not violate the possession statute if he or she immediately called the police or the owner of the medication. But during either call, the homeowner would clearly "possess" the medication.[9] By admitting that certain types of possession do not violate the statute, the State conceded that some form of innocent possession defense exists. We agree.

■ ¶ 18 Our rule of statutory interpretation requires us "to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve." [10] The best evidence of the legislature's intent is "the plain language of the statute itself." [11] And "[w]hen examining the statutory language, we assume the legislature used each term advisedly and in accordance with its ordinary meaning." [12]

■ ¶ 19 The plain language of the possession statute provides that a defendant is guilty of the crime of possession if he (1) knowingly and intentionally, (2) possesses, (3) a controlled substance.[13] The Controlled Substance Act defines "possession" using

4. *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444.

5. Utah Code Ann. § 58–37–4(2)(b)(i)(A)(X), (XIV) (2007) (listing hydrocodone and oxycodone as Schedule II controlled substances).

6. *Id.* § 76–1–105 (2003) ("Common law crimes are abolished and no conduct is a crime unless made so by this code, other applicable statute or ordinance.").

7. *State v. Gardiner*, 814 P.2d 568, 574 (Utah 1991).

8. Utah Code Ann. § 58–37–8(2)(a)(i) (2007).

9. Under the theory of constructive possession, a person may be found guilty of possession where drugs or contraband are in the person's home even if not on his or her person. *See e.g., State v. Layman*, 1999 UT 79, 985 P.2d 911 (1999).

10. *State v. Bluff*, 2002 UT 66, ¶ 34, 52 P.3d 1210.

11. *State ex rel. Z.C.*, 2007 UT 54, ¶ 6, 165 P.3d 1206 (citations omitted).

12. *Id.*

13. Utah Code Ann. § 58–37–8(2)(a)(i).

terms such as "retaining" and "maintaining," and it provides that possession may be inferred if the person charged has "the ability and the intent to exercise dominion and control over" the item.[14] This definition does not, however, clarify whether the term "possess," as it is used in the possession statute, includes the type of innocent possession at issue here—temporary possession for the purpose of returning a controlled substance to its lawful owner. And when we "find a provision that causes doubt or uncertainty in its application, we must analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose."[15]

¶ 20 In this case, the legislature has clearly evinced its intent regarding how courts are to interpret the penal code. Most important is the legislature's directive that the penal code shall not "be strictly construed."[16] Rather, courts are to construe the code's provisions "according to the fair import of their terms *to promote justice* and to effect the objects of the law and the general purposes of Section 76–1–104."[17] Section 76–1–104 further advises courts to construe the code to "[d]efine adequately the conduct and mental state which constitute each offense and *safeguard conduct that is without fault from condemnation.*"[18]

■ ¶ 21 Strictly construing the term "possess" to include every type of possession, whether culpable or innocent, contradicts the legislature's directive to avoid strictly con-

struing the code, and it is contrary to the policy goals of safeguarding faultless conduct and promoting justice. This is most apparent in the many examples of injustices that may result from strictly construing the term "possess." A daughter who no longer lives at home but who picks up her sick mother's prescription medication and drives it to her mother's home, for example, could be guilty of felony possession under a strict construction of the term "possess."[19] And, as this case demonstrates, a house guest who inadvertently leaves a prescription bottle of pills at a homeowner's home creates an impossible situation for the homeowner wherein she could do nothing short of immediately fleeing her home to avoid "possessing" the pills. Because construing the term "possess" to include brief, innocent possession contradicts the legislature's interpretative guidelines and creates a myriad of absurd prosecutorial possibilities, we hold that the term "possess," as it is used in section 58–37–8(2)(a)(i), excludes transitory possession of a controlled substance for the purpose of returning it to its lawful owner. That is, we hold that the possession statute implicitly includes the defense of innocent possession.[20] We next address the parameters of that defense.

■ ¶ 22 Miller proposed an instruction for the innocent possession of drugs based on an instruction that the Court of Appeals for the District of Columbia recognizes for the innocent possession of firearms.[21] Tailoring

---

**14.** *Id.* § 58–37–2(1)(ii).

**15.** *Bluff*, 2002 UT 66, ¶ 34, 52 P.3d 1210 (2003).

**16.** Utah Code Ann. § 76–1–106.

**17.** *Id.* (emphasis added).

**18.** *Id.* § 76–1–104 (emphasis added).

**19.** Universally, courts that recognize an innocent possession defense cite public policy reasons for doing so, chiefly to "prevent a conviction for an innocent act." *People v. E.C.*, 195 Misc.2d 680, 761 N.Y.S.2d 443, 445 (Sup.Ct.2003). In *People v. E.C.*, the New York appellate court recognized an innocent possession defense and hypothesized that a juror who handles illegal drugs as part of a review of the evidence would be guilty of possession under a strict interpretation of the possession statute. *Id.* California also recognizes the innocent possession defense and applies it to

"fleeting and transitory" possession of illegal drugs "for the purpose of disposal." *People v. Martin*, 25 Cal.4th 1180, 108 Cal.Rptr.2d 599, 25 P.3d 1081, 1088–89, n. 9 (2001).

**20.** We also note that the legislature has provided the statutory defense of justification. The justification defense protects from prosecution conduct that is "justified for *any . . . reason* under the laws of this state." Utah Code Ann. § 76–2–401(1)(e). This is a broad catchall provision that allows courts to ensure that justice is done. In this case, we believe that justice requires interpreting the possession statute to include the defense of innocent possession.

**21.** *See United States v. Mason*, 233 F.3d 619 (D.C.Cir.2000); *cf. United States v. Curls*, 219 Fed.Appx. 746, 758 (10th Cir.2007) (recognizing the "fleeting possession" defense that requires a defendant "to establish that he (a) 'merely mo-

the innocent possession of firearms defense to a controlled substance possession charge, the defense applies if (1) the controlled substance was attained innocently and held with no illicit or illegal purpose, and (2) the possession of the controlled substance was transitory; that is, that the defendant took adequate measures to rid himself of possession of the controlled substance as promptly as reasonably possible.

¶ 23 This is an appropriate instruction. It requires that a standard of reasonableness be applied to the innocent possession of a controlled substance, and in so doing, does not impose an obligation on individuals to focus their efforts exclusively on returning a controlled substance to its lawful owner once it comes into their possession. Nor does this instruction impose an arbitrary time limit for return of a controlled substance or require only fleeting or momentary possession that may not be practical given the circumstance. If a possessor of a controlled substance takes reasonable action to return that substance to its lawful owner, possession may be longer than momentary, yet the possessor would still be entitled to an instruction on the defense of innocent possession. The instruction leaves to the jury the question of whether a defendant took adequate measures to rid himself of a controlled substance as promptly as reasonably possible.

### CONCLUSION

¶ 24 We hold that the term "possess" as used in Utah Code section 58–37–8(2)(a)(i) excludes temporary possession of a con-

trolled substance for the purpose of returning it to its lawful owner. Thus, the statute implicitly includes the defense of innocent possession, and Miller was entitled to an instruction based upon it. Because the trial court refused Miller's proposed instruction, we remand for a new trial at which Miller is entitled to the following innocent possession defense instruction: the defendant's possession of the controlled substances found in his pocket did not violate Utah Code subsection 58–37–8(2)(a)(i) if (1) the controlled substance was obtained innocently and held with no illicit or illegal purpose, and (2) the possession of the controlled substance was transitory; that is, the defendant took adequate measures to rid himself of possession of the controlled substance as promptly as reasonably possible. It will be for the jury to decide whether, given this instruction along with the facts Miller presents, his possession was innocent.

¶ 25 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Judge BENCH concur in Associate Chief Justice DURRANT'S opinion.

¶ 26 Justice NEHRING does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.

mentarily possessed [the] contraband' and (b) 'either lacked knowledge that he possessed the contraband or had a legally justifiable reason to possess it temporarily' ").