**COMMONWEALTH of Kentucky,**
**Appellant,**

v.

**James David ADKINS, Appellee.**

**No. 2009–SC–000782–DG.**

Supreme Court of Kentucky.

Jan. 20, 2011.

instructions did not adequately address his defense and so reversed his conviction and remanded for a new trial. We granted the Commonwealth's motion for discretionary review to consider to what extent our statutes provide for an innocent possession defense, and specifically we asked the parties to address the issue in light of KRS 218A.220, which exempts certain persons whose possession of controlled substances is incidental and temporary from the criminal offense provisions of the KRS Controlled Substances chapter. Agreeing with the Court of Appeals that Adkins was entitled to an instruction embodying his innocent possession defense, we affirm.

Jack Conway, Attorney General, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellant.

Jamesa J. Drake, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Following a jury trial in the Ohio Circuit Court, James David Adkins was found guilty of first-degree trafficking in a controlled substance (methamphetamine), in violation of Kentucky Revised Statute (KRS) 218A.1412, and of possession of drug paraphernalia, in violation of KRS 218A.500. He was sentenced to concurrent terms of confinement of five years and twelve months, respectively. At trial, Adkins presented an "innocent possession" defense, and on appeal to the Court of Appeals, he argued that the trial court erred by refusing a jury instruction that expressly addressed that defense. In a unanimous Opinion, a panel of the Court of Appeals agreed with Adkins that the jury

### RELEVANT FACTS

At trial the Commonwealth's proof included testimony to the effect that on March 16, 2007 a member of the Ohio County Sheriffs Department arrested Adkins on unrelated charges at Adkins's brother's home. That particular house fronts Highway 69 in Dundee, Kentucky, and is close to and occupies the same parcel of land as Adkins's own home. During the search of Adkins's person incident to the arrest, the officer removed from Adkins's pocket a small sock containing several unused plastic baggies, two straw-like implements suitable for snorting or smoking methamphetamine, and two baggies containing what proved to be almost seventeen grams of that drug. Other testimony was to the effect that methamphetamine is commonly packaged for illegal sale in small baggies and that seventeen grams of methamphetamine is considerably more than a person would ingest at any one time. Based on this evidence the Commonwealth argued that Adkins had violated that portion of the trafficking statutes which makes it unlawful to possess methamphetamine "with the

intent to ... distribute, dispense, or sell" it. KRS 218A.010(34) (2006).[1]

Adkins conceded that he possessed the methamphetamine and other items the officer found in his pocket, but he denied that he did so with the intent to "distribute, dispense, or sell" the drug. He testified that a short time before his arrest, he found the sock lying in the driveway that serves both his and his brother's residences and placed it into his pocket to keep it away from his young son. Also, because he believed it had been dropped by one of his brother's acquaintances, a reputed drug dealer, Adkins attempted to report it to the sheriff by phone. In support of this version of events, Adkins and two of his friends testified that they had seen the acquaintance leaving from the brother's driveway earlier that day, and both Adkins and one of those friends testified that they saw a small object fall from the acquaintance's truck as he was preparing to pull away. Adkins testified that when he was unable to contact the sheriff by phone he intended to turn the drugs in at the sheriff's office and to report his suspicions about his brother's acquaintance. This evidence of innocent or lawful possession entitled him, Adkins argued before the trial court, to an instruction expressly recognizing innocent possession as a defense to the charges against him.

The trial court denied Adkins's request and instead, following the model instruction found at § 9.11B of Cooper's *Kentucky Instructions to Juries* (2010), instructed the jury as follows:

You will find the defendant, James David Adkins, guilty of trafficking in a controlled substance in the first degree under this instruction, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:

1.) That in this county on or about March 16, 2007, and before the finding of the indictment herein, he had in his possession a quantity of methamphetamine, AND

2.) That he knew the substance so possessed by him was methamphetamine, AND

3.) That he had the methamphetamine in his possession with the intent to sell, distribute or dispense it to another person.

Adkins sought to have the word "unlawfully" inserted in subsection (1) of this instruction so that it would read "he *unlawfully* had in his possession a quantity of methamphetamine." The trial court refused this insertion because it was reluctant to alter the model instruction and because in its view subsection (3) of the instruction gave Adkins an adequate avenue for arguing his innocent possession defense.

The Court of Appeals disagreed. Relying on cases reiterating that the trial court is to instruct on the whole law of the case and in particular is to instruct on statutory defenses if the defense is reasonably deducible from the evidence, *Fredline v. Commonwealth*, 241 S.W.3d 793 (Ky.2007) (intoxication); *Mondie v. Commonwealth*, 158 S.W.3d 203 (Ky.2005) (protection against burglary); *Mishler v. Commonwealth*, 556 S.W.2d 676 (Ky.1977) (intoxication), the Court of Appeals held that Adkins had presented sufficient evidence of an innocent possession defense to entitle him to an affirmative instruction encapsulating that defense. We granted

---

1. KRS 218A.1412 establishes first-degree trafficking as the knowing and unlawful trafficking in certain drugs, including methamphetamine. KRS 218A.010(34) (2006) defines "traffic" as meaning, among other things, "to possess with intent to manufacture, distribute, dispense, or sell a controlled substance."

discretionary review to consider whether "innocent possession" is a defense with a statutory basis, and in particular we asked the parties to consider KRS 218A.220 and to brief its applicability to this case. Before addressing that specific question, however, we consider Adkins's more general claim that the trafficking statute itself provides him with the innocent possession defense he asserts.

## *ANALYSIS*

### I. The Court Of Appeals Correctly Determined That "Innocent Possession" Is A Defense Implicit In The Controlled Substance Statutes.

The Commonwealth argues that the Court of Appeals opinion was wrong for a couple of reasons. The Commonwealth's first contention is based on a hypothetical inapplicable to this case. According to the Commonwealth, because Adkins was not charged with illegal possession, but with trafficking, Adkins's proposed instruction risked suggesting to the jury that if Adkins acquired the drugs innocently he could not be guilty of trafficking, whereas, as the Commonwealth points out, even a person who obtains drugs law fully, such as through a proper prescription, can be guilty of the form of trafficking alleged against Adkins if he intends to provide the drugs to others and has no right to do so. In that event, however, the possession itself, coupled with the unlawful intent, becomes illegal, and we find ourselves back at Adkins's claim that his particular possession, not merely his acquisition, of the drug was lawful. Adkins clearly did not obtain the methamphetamine by prescription so that part of Commonwealth's hypothetical is not germane to this case. We focus on the facts before us in addressing whether Adkins was entitled to a more specific jury instruction and leave for another day the proper instruction for the Commonwealth's hypothetical prescription drug trafficker.

The Commonwealth primarily maintains that Adkins's defense was not the sort of affirmative, statutory defense at issue in the cases upon which the Court of Appeals relied, but is better understood, as the trial court understood it, as simply the denial or converse of one of the elements of the actual offense, and thus does not require its own express instruction. We disagree.

With the adoption of the Penal Code, of course, our criminal law became exclusively statutory, KRS 500.020, and since then, accordingly, our jury instruction cases have focused on whether the evidence would permit the finding of a statutory defense. If so, they have required an instruction affirmatively reflecting that defense in some manner. *See, e.g., Thomas v. Commonwealth,* 170 S.W.3d 343 (Ky. 2005) (extreme emotional disturbance); *Mondie,* 158 S.W.3d at 209 (protection against burglary); *Walker v. Commonwealth,* 127 S.W.3d 596 (Ky.2004) (mistake of law). The evidence in this case similarly supports the giving of an instruction affirmatively reflecting the defense of innocent possession of a controlled substance.

■ What constitutes innocent possession of a controlled substance? As courts in several sister states which have addressed the "innocent possession" defense have noted, it is easy to imagine numerous circumstances in which a person might take possession of a controlled substance without any unlawful intent. *See, e.g., State v. Miller,* 193 P.3d 92 (Utah 2008); *Ramsubhag v. State,* 937 So.2d 1192 (Fla. App.2006); *People v. E.C.,* 195 Misc.2d 680, 761 N.Y.S.2d 443 (N.Y.Supr.Ct.2003); *People v. Martin,* 25 Cal.4th 1180, 108 Cal.Rptr.2d 599, 25 P.3d 1081 (2001);

*Adams v. State,* 706 P.2d 1183 (Alaska App.1985). A parent confiscating drugs from his or her child, a teacher finding drugs in his or her classroom, a daughter picking up a prescription for her bedridden parent, a homeowner finding medicine left behind by a guest, all could be, deemed illegal possessors under strictly construed possession statutes. Moreover, if the teacher transferred the drugs to his or her principal, or the homeowner gave the drugs to the guest's spouse who came by to pick them up, the teacher and homeowner could be deemed guilty of trafficking as well. We are confident that the General Assembly did not intend to criminalize the possession or transfer of controlled substances in circumstances such as these, and it is for that reason, among others, that our statutes prohibiting possession and trafficking all require that the possession or trafficking be "knowing and unlawful." See KRS 218A.1412—KRS 218A.1417. We agree with Adkins, therefore, that these statutes implicitly recognize an innocent possession or innocent trafficking defense, and whenever the evidence reasonably supports such a defense—where there is evidence that the possession was incidental and lasted no longer than reasonably necessary to permit a return to the owner, a surrender to authorities, or other suitable disposal—the instructions should reflect it.

We recognize that the form of trafficking with which Adkins was charged—possession with the intent to sell, distribute, or dispense—is unlike the other forms of trafficking and unlike the degrees of unlawful possession in that it has as one of its elements a specific intent. If the jury believed Adkins's testimony it could, by reference to that part of the general instruction reflecting that element, (subsection (3)) have found him not guilty. For that reason, the Commonwealth argues that, with this form of trafficking at least,

a claim of innocent possession amounts merely to the converse of the intent element and thus does not require an express defensive instruction. As the Commonwealth correctly notes, our pre-Penal Code cases attempted to distinguish between defenses, such as alibi, that amounted to a simple denial of the act charged and did not require an affirmative defensive instruction, *e.g. Shavers v. Commonwealth,* 514 S.W.2d 883 (Ky.1974); *Stafford v. Commonwealth,* 490 S.W.2d 738 (Ky.1973); *Owens v. Commonwealth,* 487 S.W.2d 897 (Ky.1972), and defenses confessing the predicate act but asserting an excuse or justification for it, which did require such an instruction. *See, e.g. Kohler v. Commonwealth,* 492 S.W.2d 198 (Ky.1973); *Cooley v. Commonwealth,* 459 S.W.2d 89 (Ky.1970); *Evitts v. Commonwealth,* 257 Ky. 586, 78 S.W.2d 798 (Ky.1935). The Commonwealth maintains that this case is one of the former kind, since Adkins's defense amounts to a denial of the intent element of the offense, and thus that Adkins was not entitled to an affirmative defensive instruction. Our pre-Penal Code case law suggests otherwise.

*Kohler v. Commonwealth, supra,* was a case like this one in which the defendant was charged with trafficking in a controlled substance. Kohler, like Adkins, claimed that he did so not with an illegal intent, but in an effort to aid the police. This Court acknowledged, in *Kohler,* that the distinction between denial and justification or excuse defenses was not always easy to apply, but reasserted

> that when a defendant confesses the doing of the act of which he stands accused but asserts a legal excuse or justification exonerating him from criminal intent the court should submit his theory of defense in concrete form.... The instant case in which appellant seeks to avoid criminal liability upon the ground that

the act with which he is charged was done to assist law enforcement officers is precisely the type of case in which an affirmative instruction is necessary.

492 S.W.2d at 200. Accordingly, the Court held that while the general instruction requiring acquittal unless the jury found, among other things, that the defendant "unlawfully and feloniously sold a narcotic drug," provided an opportunity for the defendant to argue that his conduct had not been "felonious," that opportunity was inadequate, and the defendant was entitled to an affirmative instruction embodying his defense. To the extent that pre-Penal Code precedent bears on the matter, therefore, it supports the decision reached by the Court of Appeals.

As the Court of Appeals correctly observed, moreover, our cases since the adoption of the Penal Code have insisted that the instructions should expressly reflect a statutory defense if there is evidence reasonably supporting it, and this is so even where intent is an element of the alleged offense and the defense purports to negate that element or in some other way to justify or mitigate it. *Fredline v. Commonwealth*, 241 S.W.3d at 797 (intoxication); *Mishler v. Commonwealth*, 556 S.W.2d at 680 (same); *Thomas v. Commonwealth*, 170 S.W.3d at 348–49 (extreme emotional disturbance); *Hilbert v. Commonwealth*, 162 S.W.3d 921 (Ky.2005) (self defense). In other words, where the defense is not simply that the Commonwealth has failed to prove intent beyond a reasonable doubt, but rather, as here, asserts facts which the General Assembly has recognized as tending to disprove or to justify or to excuse the offense, an instruction reflecting that defense is required. KRS 218A.1412, by implicitly recognizing that in limited circumstances one might innocently and without unlawful intent possess controlled substances that belong to another person, creates such a defense.

Thus, given the evidence adequately raising that defense here, the Court of Appeals correctly determined that Adkins was entitled to an instruction reflecting his alleged innocent possession.

## II. KRS 218A.220 Creates A Specific "Innocent Possession" Defense For Incidental Possession In Aid Of Public Officers.

Our conclusion regarding "innocent possession" is confirmed by KRS 218A.220. That statute exempts from the controlled substance prohibitions persons engaged in the lawful storing or transporting of such substances, public officials and their employees and agents whose duties require possession of them, and, as pertinent here, persons whose "temporary incidental possession ... is for the purpose of aiding public officers in performing their official duties." The question is whether a person who takes possession of a controlled substance, as Adkins claims to have done, with the unilateral intention of turning it over to the police "aids" the officer in the performance of his or her duties, or whether "aiding" requires some prior arrangement between the officer and the person possessing the drugs.

As the parties note, our prior decisions do not resolve this question. In *Harris v. Commonwealth*, 579 S.W.2d 111 (Ky.1979), we addressed a different portion of the statute and held that one who procured heroin for someone he believed was an addict but who in fact was an undercover officer posing as such was not acting as the officer's agent. In *Coates v. Commonwealth*, 469 S.W.2d 346 (Ky.1971), we held that the exemption provided by an earlier version of the statute did not extend to one who possessed marijuana ostensibly to turn it over to the Commissioner of Corrections, since the Commissioner's duties did not include investigating drug offenses.

Adkins does not claim to have acted as the agent of the sheriff. He claims, rather, that citizens who take temporary possession of controlled substances in order to turn them over to police officers aid the officers in the performance of their drug interdiction duties. We agree with this principle.

Among the evident purposes of KRS 218A.220 is the facilitation of police efforts to combat illegal drug activity. The statute makes clear not only that the officers themselves do not violate the law when in the course of their duties they possess controlled substances or buy and sell them, but exempts as well agents of the officers, such as informants. It also, we believe, is meant to encourage persons who find controlled substances or otherwise come innocently into their possession to turn them in and give whatever information they might have about them. The statute does so by providing assurance that possession for that limited purpose is not a crime. As with innocent possession in general, the defense this portion of KRS 218A.220 provides requires that the possession be incidental and that the possessor notify the appropriate authorities and turn in the controlled substance as soon as reasonably possible.

### III. Adkins Was Entitled to an Affirmative Instruction on Innocent Possession.

Here, Adkins offered evidence that he came into incidental possession of the methamphetamine when he found it lying in his brother's driveway. There was evidence in addition to Adkins's own testimony that, a short time before, a known drug dealer had dropped something in the driveway. There was also Adkins's testimony that almost immediately after finding the drugs he attempted to call the sheriff to report them. There were phone records lending some support to that testimony. And there was Adkins's testimony that his intent was to turn the drugs in at the sheriffs office and to report where he believed they came from, but before he had an opportunity to do so, and within about two hours of finding the drugs, he was arrested. We agree with the Court of Appeals that this evidence was sufficient to raise an innocent possession defense under either KRS 218A.1412 or KRS 218A.220, and accordingly that Adkins was entitled to an instruction affirmatively embodying that defense.

Adkins's request that the general instruction be modified to specify that he could not be found guilty unless his possession of the drugs was unlawful, while certainly not the only way the instructions could be made to embody his innocent possession defense, was not improper under the facts of this case and so should have been granted. A more complete instruction in these circumstances would be to insert "unlawfully" before the phrase "had in his possession" in subsection (1) of the instruction that was given and then to state separately the concept of innocent or legal possession. That additional instruction would provide:

A person who has temporary possession of a controlled substance for the time reasonably necessary to return the controlled substance to its owner or to turn over the controlled substance to public officers performing their official duties does not possess that controlled substance unlawfully.

This affirmative explanation of lawful or innocent possession, coupled with the addition of "unlawfully" to the possession element in subsection (1), properly expresses the defense Adkins raised. On retrial, he is entitled to have the jury so instructed.

### CONCLUSION

In sum, our statutes prohibiting possession of and trafficking in controlled substances specify that to justify punishment the possession or trafficking must be "knowing and unlawful." This requirement implicitly recognizes the possibility of innocent, incidental possession or transfer, and thus allows for a defense of innocent possession where there is evidence that the possession came about incidentally and continued no longer than reasonably necessary to allow for lawful and appropriate disposal. KRS 218A.220 more specifically exonerates—and so creates a defense based upon—the temporary, incidental possession of controlled substances for the purpose of aiding public officers in the performance of their duties, and includes, we believe, incidental possession for the purpose of turning over the controlled substance to the police. Because the evidence in this case was sufficient to support a lawful possession defense, Adkins was entitled to his proffered jury instruction affirmatively reflecting innocent possession. Accordingly, we affirm the Opinion of the Court of Appeals and so remand the matter for additional proceedings to the Ohio Circuit Court.

MINTON, C.J.; NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. CUNNINGHAM, J., concurs by separate opinion.

CUNNINGHAM, Justice, concurring:

I concur with the majority; however, I write separately to address the trial court's assertion that the last paragraph of the instruction was "an adequate avenue for arguing his innocent possession defense." It does not. Had it been, I might have been persuaded that it was harmless error.

The last paragraph of the instruction requires that Appellant possess the illegal drug "with the intent to sell, *distribute,* or dispense it to another person." (emphasis added). There is no problem with criminal liability as to selling. Nor is there a difficulty with dispensing being illegal since it is defined as delivery to an "ultimate user." KRS 218A.010(8). However, distribute means "to deliver other than by administering or dispensing." KRS 218A.010(10). This would include giving it to the law enforcement officer, which would be exempt of criminal liability under KRS 218A.220.

Therefore, on the face of the instructions themselves, Appellant could have been convicted of something which was not illegal—that is, distribution. This made the giving of the exemption instruction absolutely critical. Therefore, it was not harmless, nor was there an "adequate avenue for arguing his innocent possession defense."