**STATE of Utah, Plaintiff and Respondent,**

v.

**Charles Robert OTT, Defendant and Appellant.**

**No. 870225–CA.**

Court of Appeals of Utah.

Oct. 28, 1988.

Milton T. Harmon (argued), Nephi, for Ott.

David L. Wilkinson, Atty. Gen., Dan R. Larsen (argued), Asst. Atty. Gen., for State.

Before BILLINGS, BENCH and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Charles Robert Ott appeals his bench trial conviction of theft, a third degree felony, in violation of Utah Code Ann. § 76-6-405 (1978). On appeal, defendant claims that the trial court erred by: 1) rejecting his defense of legal compulsion; 2) admitting into evidence a sales receipt assigning a value to the stolen goods; and 3) assigning a value to the stolen property without considering the fact that labor enhanced its value after it was stolen. We affirm.

## FACTS

In February of 1987, Darin Brailsford with the assistance of another individual, stole two truckloads of insulated copper wire from the Intermountain Power Project ("I.P.P.") near Delta, Utah. This wire had been removed from I.P.P.'s security compound and placed outside the fence surrounding the project by Garth Bott. Bott placed the wire outside the fence in order to steal it at a later time. Before Bott returned, Brailsford discovered the wire, removed it and sold it for $900.

Sometime later, Bott discovered Brailsford's fortunate find and promptly threatened Brailsford with serious bodily injury if he did not turn over the proceeds of the sale.

In order to repay Bott, Brailsford devised a scheme to steal additional copper from I.P.P. Brailsford recruited defendant to assist in his efforts. Brailsford informed defendant of Bott's threats and offered to pay him $100 if defendant agreed to assist him.

On the night of February 11, 1987, defendant, Brailsford, Jeff Ivie, and one other individual drove to I.P.P. in two separate trucks. The parties entered I.P.P., removed copper wire from the compound and loaded approximately 1000 pounds in each truck. Thereafter, they drove to a nearby canyon, unloaded the trucks and poured gasoline on the wire to burn off the insulation. The following morning, they reloaded their trucks with the bare copper wire and drove to Salt Lake City where Brailsford sold the copper to Wasatch Metal and Salvage ("Wasatch") for $844. Following the sale, Brailsford paid Bott $500 and defendant $100 as promised.

On February 18, 1987, defendant and Brailsford returned to I.P.P. to steal more wire and were subsequently apprehended by I.P.P. security guards. Defendant and Brailsford were turned over to the Millard County Sheriff's Office and taken into custody. While in custody, defendant claims he was promised immunity by the officers in exchange for his cooperation. Therefore, according to defendant, he confessed to the February 11th theft and disclosed

additional information about other copper wire disappearances. Despite the promise of immunity, defendant was arrested and prosecuted.

At a preliminary proceeding, defense counsel moved to suppress defendant's confession on the grounds that it was illegally obtained. Although the motion was granted, defendant testified at trial as to his participation in the February 11th theft. Additionally, as part of a plea bargaining arrangement, Brailsford and Ivie also testified implicating defendant in the theft. Their testimony revealed that Brailsford and Ivie sold approximately 2000 pounds of the stolen wire to Wasatch for $844. The prosecution also called an expert witness, a dealer in scrap metal at Wasatch, to testify as to the value of insulated copper wire of the same quality as that which defendant sold uninsulated. He testified that insulated wire was worth about thirty cents a pound in Salt Lake City or approximately $633. In addition, the prosecution introduced a sales receipt issued by Wasatch in the amount of $844. Defense counsel objected to the admission into evidence of the receipt on the grounds of immateriality. The trial judge overruled the objection.

At the close of oral argument, defendant's attorney again objected to the admissibility of the receipt, but this time on the grounds that it constituted "fruit of a poisonous tree," and would not have been discovered but for the defendant's illegally obtained confession.

Defendant was convicted of theft and sentenced accordingly.

## LEGAL COMPULSION

■ Defendant claims Bott's threat of serious bodily injury or death to his friend Brailsford compelled him to steal the wire. Defendant claims he called the police anonymously to report Bott's threats but the police would not help him because no assault had yet occurred. Defendant insists that stealing the wire was the only means for Brailsford to repay Bott and thus escape injury.

Utah Code Ann. § 76–2–302(1) (1978) sets forth the defense of legal compulsion as follows:

> A person is not guilty of an offense when he engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would not have resisted.

In *State v. Tuttle*, 730 P.2d 630 (Utah 1986), the Utah Supreme Court considering section 76–2–302(1) held that in order to assert the defense: 1) the defendant must be faced with a specific, imminent threat of death or serious bodily injury, and 2) there is no reasonable legal alternative to violating the law. *Id.* at 634–35.

In addressing the imminent threat requirement, the Utah Court has stated that "a threat directed to some indefinite time in the future is not an imminent threat" for purposes of the defense of compulsion. *State v. Harding*, 635 P.2d 33, 35 (Utah 1981) (citing *State v. Milum*, 213 Kan. 581, 516 P.2d 984 (1973)).

The trial court found that the facts were insufficient to sustain a defense of legal compulsion and we will not disturb the trial court's factual determinations unless the findings are clearly erroneous. *State v. Griffin*, 754 P.2d 965, 968 (Utah Ct.App. 1988) (citing *State v. Ashe*, 745 P.2d 1255 (Utah 1987)). Upon review of the record, we agree with the trial court's rejection of the defense of compulsion. Defendant has failed to demonstrate specific imminent threats and has also failed to demonstrate that there were no reasonable legal alternatives to committing the crime.

## ADMISSIBILITY OF THE SALES RECEIPT

■ Defendant claims the sales receipt assigning a value to the stolen goods was obtained as a result of his illegally obtained confession, and thus the receipt should not have been admitted. Even assuming, although we do not necessarily agree, that the receipt was improperly admitted into evidence, we affirm the lower court's deci-

sion as we find the value of the stolen goods was independently determined without reference to the receipt.

Under Rule 30 of the Utah Rules of Criminal Procedure, "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984). *See also State v. Anderson*, 612 P.2d 778, 786–87 (Utah 1980) (error was rendered harmless by the independent testimony of the other witnesses at the hearing).

As in *Anderson*, we find that the trial court's error in admitting the receipt, was rendered harmless by the independent testimony of both Brailsford and Ivie. In order to reach this conclusion, we must find that Brailsford and Ivie's testimony regarding the value of the stolen wire arose "from an independent motivation by the witness[es] to make the disclosure." *State v. Romero*, 624 P.2d 699, 702 (Utah 1981).

The facts of this case support such a finding. Motivated to testify by a plea bargain, both Brailsford and Ivie testified that they sold the stolen wire to Wasatch for $844, thus independently verifying the value of the sale. Moreover, despite a sustained motion to suppress his confession, defendant talked freely about the sale of the copper wire at trial. The value evidenced by the receipt was duplicative and therefore, the admission of the receipt was harmless error.

## VALUE OF THE STOLEN WIRE

■ Defendant's final claim of error is that there was insufficient evidence that the value of the copper wire at the time and place of the theft exceeded $250.

Our supreme court has held that in order to determine the value of stolen property for the purpose of determining the degree of the offense, market value is the appropriate test. *State v. Logan*, 563 P.2d 811, 813 (Utah 1977). The fair market value is measured at the time and place where the alleged crime was committed. *Id.* "Market value has been further clarified as being a measure of what the owner could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *Id.* (citations omitted).

Defendant claims that the wire was improperly valued for two reasons. First, defendant argues that the value of the copper wire was greatly increased when its insulation was burned off and the wire was transported from Millard County to Salt Lake City. Defendant claims that labor enhanced the value of the property after it was stolen. Second, defendant claims that although the wire sold for $844 at Wasatch, in Salt Lake City, the same wire, would sell for less than $600 in Millard County. We find defendant's arguments unpersuasive.

The expert testimony of Mr. Holman, a dealer in scrap metal, stated that *insulated* wire of the same quantity and quality would sell in Salt Lake City for around 30¢ per pound, or approximately $633. Therefore, even assuming that we adopted defendant's argument, and valued the wire in its insulated form, the evidence establishes that the value exceeds the $250 statutory requirement. Further, the expert testimony indicated Salt Lake City was the closest market. Consequently, the trial judge correctly interpreted "at the time and place of the offense" to mean a time reasonably near the date of the theft and at the nearest market, *i.e.*, Salt Lake City. In sum, we affirm the trial court's valuation of the stolen copper wire at more than $250.

Accordingly, we affirm.

BENCH and ORME, JJ., concur.