**2019 UT App 27**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LOURDES RIVERA,
Appellant.

Opinion
No. 20170386-CA
Filed February 22, 2019

Third District Court, Salt Lake Department
The Honorable Ann Boyden
No. 141910225

Nathalie S. Skibine and Richard G. Sorenson,
Attorneys for Appellant

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Defendant Lourdes Rivera appeals her convictions for carrying a loaded concealed firearm and possession of a controlled substance. We conclude that the trial court erred when it denied Defendant's request for an innocent-possession jury instruction on the charge of possession of a controlled substance. We therefore reverse that conviction and remand for a new trial on that charge, but affirm in all other respects.

BACKGROUND

¶2      While visiting her boyfriend (Boyfriend) at his apartment, Defendant grew tired of Boyfriend's repeated drug use and the two argued. In an effort to stop his drug use, Defendant took away Boyfriend's drugs, put them in her purse, and then went into the bathroom to shower, locking the door behind her. While she showered, Boyfriend banged on the door and continued to argue, demanding that Defendant return his "stuff."

¶3      When Defendant had finished showering, dressed, and exited the bathroom, Boyfriend, Boyfriend's son, and Boyfriend's brother (Brother) were standing at the end of the hall. Brother pointed a gun in Defendant's direction and Boyfriend told Brother, "Shoot the bitch. Shoot the bitch, motherfucker." Scared, Defendant said she tried to call the police but her phone would not work. The three men ran from the apartment and Defendant saw Boyfriend drive away, though she did not know where the other two went.

¶4      Defendant then whistled toward a nearby apartment to alert her daughter (Daughter) that they needed to leave. While waiting for Daughter, Defendant ran back inside Boyfriend's apartment to retrieve a loaded .22 caliber pistol, putting it in her bra for safety. She put her purse on the bed in the bedroom and left it there. Defendant again stepped out of Boyfriend's apartment. At the same time Daughter came to Defendant and, by that time, numerous police officers had arrived at the apartment complex. Defendant later testified that she did not know exactly why the officers were there, because everything had happened so fast.

¶5      Defendant collected Daughter and walked outside the gate of the courtyard of the apartment complex. Once outside the gate, a police officer approached Defendant and asked if she

had seen anyone with a gun or heard anything. Defendant said, "No," and the officer walked away.

¶6     A short time later, however, some children in the apartment complex informed the officers that Defendant was the person with a gun. Officers again approached Defendant. One officer testified that he asked Defendant if she had any weapons on her and Defendant said, "No." But the officer's police report does not mention whether he actually asked Defendant about weapons, and Defendant testified that she did not remember such a question. A second officer asked Defendant if she had a weapon on her and Defendant said that she had a gun in her bra. This officer performed a pat down search revealing Defendant's gun where Defendant said the officer would find it. The officer handcuffed Defendant and gave her a *Miranda*[1] warning. Defendant nevertheless agreed to speak with the police.

¶7     Although Defendant explained to the police what had happened, she could not remember what she and Boyfriend were fighting about. She also did not mention that she had put Boyfriend's drugs in her purse, which was still inside the apartment. While Defendant spoke to police officers, Defendant's sister (Sister) arrived to pick up Daughter. The police allowed Daughter into Boyfriend's apartment to retrieve a few things. Along with her backpack, Daughter brought out Defendant's purse.

¶8     Sister opened the purse on the ground, looking for a key that Defendant had said was inside her purse. During Sister's search of the purse, police officers saw a suspicious pouch and asked Defendant if she had drugs in her purse. Defendant indicated that she did. The officers' search of the purse revealed what appeared to be drugs and drug paraphernalia, as well as

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

two live .22 rounds and a spent .22 casing. Defendant later testified that the drugs were not hers and that she did not use drugs.

¶9 The State charged Defendant with several offenses and proceeded to trial on the charges of possession of a firearm by a restricted person, possession of a controlled substance, possession of drug paraphernalia, and carrying a concealed dangerous weapon. Defendant asserted as defenses that she was compelled to possess the gun and drugs and that she innocently possessed the drugs and drug paraphernalia. Defendant requested that the trial court instruct the jury on each of these defenses, but the trial court declined to rule on this request until the evidence had been presented at trial.

¶10 At the outset of the trial, the court and the parties discussed whether the officers could testify that they were responding to a report of a "woman with a gun" or whether they should be limited to stating that they were responding to a report of a "person with a gun." Defendant objected to the officers' use of the phrase "woman with a gun," specifically arguing that the use of that phrase would lead the jury to improperly infer that she was the subject of the report. Ultimately, the trial court overruled Defendant's objection and allowed the officers to testify that they had been responding to a report of a "woman with a gun."

¶11 At the close of the State's case, Defendant moved for a directed verdict. Defendant asserted that Utah law regarding concealed weapons allowed her to carry a concealed firearm on "her property," and that the State did not present sufficient evidence at trial to establish that Defendant was not on her property when the police found her with the gun. According to Defendant, the State's own evidence showed that the police encountered her "right outside the apartment complex which is a common area, . . . it's her property." The trial court

concluded, however, that the evidence established that Defendant was not on her property when the police engaged her because Defendant was outside the gate of the apartment complex.

¶12    At the close of Defendant's case, the court revived the discussion regarding Defendant's two requested defense instructions—innocent possession and compulsion. As to innocent possession of the drugs and paraphernalia, the trial court determined that there was no evidence of any illegal purpose regarding Defendant's possession of the drugs and paraphernalia. The court denied Defendant's request for an innocent-possession instruction, however, because the evidence showed that Defendant had made no attempt to dispose of the drugs or turn them over to the police. On the defense of compulsion to carry a firearm, the court determined that the defense did not apply because any threat to Defendant had dissipated after the three men left the apartment. With respect to the compulsion to possess drugs, the court determined that Boyfriend's use of drugs throughout the night was not an imminent threat. Accordingly, the court denied Defendant's request for a compulsion instruction.

¶13    The jury convicted Defendant of two of the four charges: carrying a loaded, concealed firearm and possession of a controlled substance. Defendant appeals.

ISSUES AND STANDARDS OF REVIEW

¶14    Defendant raises four issues on appeal. First, she argues that the trial court erred when it denied her request for jury instructions on her innocent-possession and compulsion defenses. "We review a [trial] court's refusal to give a requested jury instruction for correctness." *State v. Dozah*, 2016 UT App 13, ¶ 12, 368 P.3d 863.

¶15    Defendant next contends that the trial court erred when it denied her hearsay objection to the officers' testimony regarding the original report of a woman with a gun. In assessing hearsay rulings, "we review legal questions for correctness, factual questions for clear error, and the final ruling on admissibility for abuse of discretion." *State v. McNeil*, 2013 UT App 134, ¶ 14, 302 P.3d 844, *aff'd*, 2016 UT 3, 365 P.3d 699.

¶16    Defendant next argues that the trial court should have granted her motion for a directed verdict on the concealed firearm charge because the State failed to present sufficient evidence to support her conviction. In assessing a directed verdict ruling based upon a claim of insufficiency of the evidence, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645 (quotation simplified). "We will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified).

¶17    Lastly, Defendant argues that the cumulative effect of the first two errors prejudiced her defense, requiring reversal. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Carvajal*, 2018 UT App 12, ¶ 16, 414 P.3d 984 (quotation simplified). Where we conclude that the issues asserted on appeal do not constitute error or that the identified errors are "so minor as to result in no harm," the cumulative error doctrine is inapplicable. *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 40, 428 P.3d 1038 (quotation simplified); *see also State v. Wright*, 2013 UT App 142, ¶ 44, 304 P.3d 887. "In other words, the doctrine will only be applied to

errors that are 'substantial' enough to accumulate." *Martinez-Castellanos*, 2018 UT 46, ¶ 40.

ANALYSIS

I. Jury Instructions

¶18 Defendant argues that the trial court erred when it denied her request to instruct the jury on two affirmative defenses: innocent possession and compulsion. Defendant first asserts that she was entitled to a compulsion instruction because she was coerced to possess both the gun and the drugs. She also argues that the jury should have been instructed on the innocent-possession defense regarding Defendant's possession of a controlled substance. We agree with Defendant that the trial court should have instructed the jury regarding Defendant's innocent-possession defense with respect to her possession of a controlled substance. We accordingly reverse that conviction. We otherwise affirm.

¶19 When requested by a criminal defendant, a trial court must give an instruction regarding a particular affirmative defense "if evidence has been presented—either by the prosecution or by the defendant—that provides any reasonable basis upon which a jury could conclude that the affirmative defense applies to the defendant." *State v. Low*, 2008 UT 58, ¶ 25, 192 P.3d 867. "However, a court need not instruct the jury on the requested affirmative defense where the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether the defendant acted in accordance with that affirmative defense." *State v. Burke*, 2011 UT App 168, ¶ 81, 256 P.3d 1102 (quotation simplified). We first address Defendant's request for an innocent-possession jury instruction then consider her request for the jury to be instructed on compulsion.

A.    Innocent-Possession Defense

¶20    Relevant here, it is unlawful in Utah "for any person knowingly and intentionally to possess or use . . . a controlled substance." Utah Code Ann. § 58-37-8(2)(a)(i) (LexisNexis Supp. 2018).[2] This statutory provision "implicitly includes the defense of innocent possession." *State v. Miller*, 2008 UT 61, ¶ 21, 193 P.3d 92. The innocent-possession defense "applies if (1) the controlled substance was attained innocently and held with no illicit or illegal purpose, and (2) the possession of the controlled substance was transitory; that is, that the defendant took adequate measures to rid [herself] of possession of the controlled substance as promptly as reasonably possible." *Id.* ¶ 22. "[W]hether a defendant took adequate measures to rid [herself] of a controlled substance as promptly as reasonably possible" is a question for the jury. *Id.* ¶ 23; *see also United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000) (observing that, where a "defendant's claims of innocent possession, lack of illicit purpose, and transitory possession are plausible, albeit debatable," the issue should be decided by the jury).

¶21    Here, the State charged Defendant with possession of a controlled substance for the drugs found in her purse. Defendant testified that, following Boyfriend's use of drugs throughout the night, she put Boyfriend's drugs in her purse to prevent his continued use. The drugs remained in Defendant's purse and in the apartment until Daughter retrieved the purse approximately two to three hours after Defendant had taken the drugs from Boyfriend. During that time period Defendant showered while Boyfriend banged on the door demanding the drugs back; Brother pointed a gun at Defendant while Boyfriend shouted, "Shoot the bitch"; the men ran away; Defendant tried to get the

---

2. Because the relevant provision has not changed, we cite the most recent version of the statute for convenience.

attention of Daughter in another nearby apartment unit; Defendant obtained a gun from the apartment and returned to collect Daughter outside; and the police questioned and ultimately arrested Defendant on suspicion of possession of a concealed, loaded firearm. It was only subsequent to Defendant's arrest that Daughter retrieved Defendant's purse from the apartment. Defendant then directed Sister to take a key from the purse, at which point the police observed what appeared to be a pouch containing a controlled substance and paraphernalia. Defendant testified, "At the time, . . . I spaced that I even grabbed the drugs from [Boyfriend] and put them in my purse" because "so much . . . happen[ed] at once."

¶22   The trial court concluded that the evidence presented at trial constituted a threshold showing of the first element of the defense—that "[Defendant] obtained [the drugs] without an illegal purpose to use [them]." The trial court declined to instruct the jury on innocent possession, however, because the court determined that there was no evidence of the second element— that Defendant's possession was transitory. The court determined that no evidence was presented to show any attempt by Defendant to abandon or destroy the drugs, or turn them over to the police despite having opportunities to do so. Although Defendant carries some burden of proof with regard to an affirmative defense, that burden "is quite limited." *State v. Sellers*, 2011 UT App 38, ¶ 15, 248 P.3d 70 (quotation simplified). Because we discern "a reasonable basis in the evidence for such a defense," Defendant was entitled to an innocent-possession instruction. *Id.*; *see also Mason*, 233 F.3d at 624.

¶23   Defendant testified that she acquired the drugs not for her use, but with the purpose of preventing Boyfriend's use. Neither party presented any other evidence as to Defendant's intent with regard to her possession of the drugs. Given this evidence, the jury could reasonably conclude that Defendant attained the drugs innocently and without an illicit or illegal purpose. The

trial court therefore properly concluded that Defendant met the threshold showing that Defendant lacked criminal intent as to possession. *See Miller*, 2008 UT 61, ¶ 21.

¶24    The evidence elicited at trial also suggests that Defendant's possession could have qualified as transitory. After Defendant took the drugs from Boyfriend, they sat in her purse while she showered and dressed. A short time later, she placed the purse in the bedroom and it remained there for approximately two to three hours until Defendant was arrested and Daughter retrieved it.

¶25    The trial court observed that no evidence was presented showing that Defendant attempted to abandon or destroy the drugs, or deliver them to the police. Likewise, the parties presented no evidence explicitly identifying Defendant's "intent to dispose of the drugs to prevent harm to others or to turn them over to the proper authorities." *See State v. Karren*, 2018 UT App 226, ¶ 24. The record establishes, however, that Boyfriend and Brother threatened Defendant's life shortly after she obtained the drugs. She tried to call the police but her phone was not working. Following this exchange, Defendant focused her attention on getting herself and Daughter out of the apartment complex, even leaving her purse behind. When officers finally discovered what appeared to be drugs in her purse, Defendant immediately acknowledged their presence. Until that point, Defendant explained that "[she] spaced that [she] even grabbed the drugs from [Boyfriend] and put them in [her] purse," citing the rapidly evolving circumstances.

¶26    Under these facts, it is possible that a reasonable jury could find that Defendant's possession was transitory. In other words, a jury could reasonably conclude by inference that Defendant "took adequate measures to rid [herself] of a controlled substance *as promptly as reasonably possible*." *Miller*, 2008 UT 61, ¶ 23 (emphasis added). Given the bulk of evidence

presented at trial showing Defendant's preoccupation with Boyfriend and Brother's threats, the jury, not the court, should be tasked with determining whether Defendant's possession was transitory. *See id.* ¶ 24. That is, the jury should determine whether under the circumstances Defendant "took adequate measures to rid [herself] of possession of the controlled substance as promptly as reasonably possible." *Id.* ¶ 22. The trial court erred when it declined to provide the innocent-possession defense instruction, and took this question from the jury.

B.      Compulsion Defense

¶27     Defendant also argues that the trial court erred when it declined to instruct the jury on Defendant's compulsion defense for her possession of Boyfriend's drugs and her possession of the loaded, concealed firearm. In particular, she asserts that "Boyfriend's drug use became an imminent threat to both Boyfriend and [Defendant]" and, as a result, she "could not give the drugs back to [Boyfriend]" without putting them both at risk. We are not persuaded and therefore affirm the court's decision not to instruct on this defense.[3]

¶28     Utah Code section 76-2-302 provides a defense to criminal charges when a person "engaged in the proscribed conduct because [she] was coerced to do so by the use or threatened imminent use of unlawful physical force upon [her] . . . , which force or threatened force a person of reasonable firmness in [her] situation would not have resisted." Utah Code Ann.

_____

3. Although we reverse Defendant's conviction for possession of a controlled substance, we address this issue because we anticipate it may arise again below. *See State v. Ogden*, 2018 UT 8, ¶ 49, 416 P.3d 1132 (noting that appellate courts "retain the authority to reach issues when . . . our analysis could prove helpful on remand").

§ 76-2-302(1) (LexisNexis Supp. 2018). In other words, a defendant is entitled to the compulsion defense instruction when they are forced to violate the law under threat or use of force and they have no reasonable alternative to violating the law. *See State v. Ott*, 763 P.2d 810, 812 (Utah Ct. App. 1988).

¶29   The evidence presented at trial suggests Defendant experienced a threat of imminent force: Brother threatened to shoot Defendant if she did not return the drugs and drug paraphernalia to Boyfriend. That threat did not compel her to keep the drugs. Thus, the circumstances plainly contradict her argument that she maintained possession of the drugs because she "was coerced to do so." *See* Utah Code Ann. § 76-2-302(1). Accordingly, we find the argument unpersuasive and affirm the trial court's denial of Defendant's request for a compulsion defense jury instruction regarding her possession of a controlled substance.

¶30   Defendant also contends that the trial court erred when it denied her request for a compulsion instruction regarding her possession of a loaded, concealed firearm. We are likewise unpersuaded. "For a threat to be imminent, it would have to appear that it had been communicated to the defendant that [she] would be subjected to physical force presently." *State v. Harding*, 635 P.2d 33, 35 (Utah 1981).

¶31   Brother and Boyfriend demanded, at gunpoint, that Defendant return the drugs she had taken from them. In response, Defendant threatened to call the police and may have done so had her phone been working. At that point, the men fled the apartment and Defendant observed Boyfriend drive away. She then left the apartment and had time to whistle to alert Daughter that they needed to leave. Only then did Defendant reenter the apartment and retrieve the gun. Explaining why she picked up the gun, Defendant asserted she feared the men and did not know where they had gone. But fearing for one's safety

is not the same as being coerced to engage in illegal activity. In order for Defendant to be entitled to a compulsion instruction, there must have been some evidence presented at trial to show that someone forced her, upon use or imminent threat of physical force, to pick up the gun and possess it. *See* Utah Code Ann. § 76-2-302(1). Under the circumstances presented here, we agree with the State that during the time Defendant unlawfully possessed a concealed, loaded firearm she was not "coerced to do so by the use or threatened imminent use of unlawful physical force upon [her] . . . , which force or threatened force a person of reasonable firmness in [her] situation would not have resisted." *Id.* Thus, we affirm the trial court's denial of Defendant's request for a compulsion defense jury instruction with respect to her possession of a concealed firearm.

## II. Hearsay Objection

¶32 Defendant next contends that the court erred when it declined to exclude the police officers' testimony regarding the original report of a woman with a gun.

¶33 Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c)(2); *see also Kranendonk v. Gregory & Swapp PLLC*, 2014 UT App 36, ¶ 23, 320 P.3d 689. Hearsay is generally inadmissible absent an exception under the Utah Rules of Evidence. *See* Utah R. Evid. 802; *see also State v. McNeil*, 2013 UT App 134, ¶ 44, 302 P.3d 844 (observing that "hearsay is generally inadmissible because the witness is acting as a conduit to relay the personal knowledge or observations of others" (quotation simplified)), *aff'd*, 2016 UT 3, 365 P.3d 699.

¶34 Defendant acknowledges that a police officer's explanation of "conduct . . . responsive to 'information

received'" is not hearsay. *See State v. Davis*, 2007 UT App 13, ¶ 24, 155 P.3d 909. She points out, however, that "if [the officer] becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of that fact asserted that it should be excluded as hearsay." *See id.* (quotation simplified).

¶35   At trial, the prosecutor asked one of the police officers, "[W]hat brought you to the scene?" The officer answered, "We responded to a [report of a] female with a gun." As a result, the officer explained, the officers started talking to people to find the woman with a gun. Another officer testified regarding "a dispatch call of a person waving a gun and kids in the area." Defendant contends that these statements constituted inadmissible hearsay. Specifically, Defendant challenges the description of the report of a "female with a gun" rather than merely a "person with a gun."

¶36   We are not persuaded that, under these circumstances, the description is anything more than the "information received" by the officers. First, Defendant does not challenge these statements as the basis for the officers' presence at the apartment complex. In other words, Defendant fails to adequately contest the State's assertion that the statements were not offered to prove the truth of the matter asserted. Additionally, Defendant fails to explain how a report of a "female with a gun" made the statement "more specific by repeating definite complaints of a particular crime by the accused." *See id.* ¶ 24 (quotation simplified). A report of a female with a gun, although narrower than the description of a "person with a gun," simply is not sufficiently definite to identify Defendant or any particular crime she allegedly committed. Accordingly, we conclude that the trial court did not exceed its discretion when it allowed the description of the report of a female with a gun.

### III. Insufficient Evidence

¶37 Defendant next argues that the State presented insufficient evidence to support her conviction for carrying a concealed firearm and that the trial court should have granted her motion for a directed verdict. When assessing the denial of a directed verdict motion based upon insufficiency of the evidence, our review is "highly deferential." *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645. "We will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified). We first address the facts presented at trial, then consider the law as applied to those facts.

¶38 The facts surrounding identification of the location where Defendant was detained and arrested by police officers are not in dispute. Defendant conceded at trial that she possessed a concealed firearm. Consequently, we address the narrower question of whether the State presented sufficient evidence that she had the concealed firearm "in or on a place other than [her] . . . property." *See* Utah Code Ann. § 76-10-504(1) (LexisNexis Supp. 2018). Although Defendant did not live in the apartment unit, she had been visiting Boyfriend at his apartment for a day or two before her arrest. On the morning of the incident and her arrest, Defendant emerged from the bathroom to Brother and Boyfriend pointing a gun at her. Brother and Boyfriend threatened to shoot her and then fled from the apartment. Fearing for her safety, Defendant took a firearm from the closet and concealed it in her bra. She then left the apartment unit and collected Daughter who was coming out of a nearby apartment unit. As police were arriving on the scene, Defendant stepped through the gate of a small fence and waited outside the fenced courtyard area for Sister. The police ultimately detained

Defendant in that spot and the State subsequently charged her with carrying a concealed firearm.

¶39   As to the identification of the particular location, Defendant was just outside the fence that surrounded the apartment courtyard but remained on the grassy area between the apartment building and the sidewalk. Defendant testified that though she was "right outside the fence" she did not believe that she had left "the property." The State presented no evidence of property ownership of the grassy area or the delineation of property lines particularly identifying the record owner of that grassy area. The parties and the trial court appear to have approved, however, of the description of that location as a "common area" appurtenant to the apartment complex property.

¶40   The concealed firearms statute prohibits a person from "carry[ing] a concealed firearm . . . *in or on a place other than* the person's residence, [or] property." *Id.* (emphasis added).[4] When interpreting a statute, our aim "is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10,

---

4. The concealed firearms statute defines "residence" as "an improvement to real property used or occupied as a primary or secondary residence." Utah Code Ann. § 76-10-501(17) (LexisNexis 2012). Because the parties do not dispute that Defendant possessed the firearm on the grassy area outside of the apartment's gate, and because no party argues that Defendant resided, even temporarily, in this area of the apartment complex, Defendant cannot be said to have been charged with carrying a concealed firearm in her "primary or secondary residence." *See id.* We also note that this statutory provision is subject to other exceptions not relevant to the circumstances of this case, so we do not address these other exceptions. *See generally id.* § 76-10-504 (Supp. 2018).

¶ 11, 368 P.3d 846 (quotation simplified). Additionally, "we avoid any interpretation which renders parts or words in a statute inoperative or superfluous in order to give effect to every word of a statute." *Id.* (quotation simplified). By its plain terms—specifically by employing the phrase "other than"—the statute does not proscribe a person's carrying of a concealed weapon while that person is "on . . . the person's . . . property." Utah Code Ann. § 76-10-504(1) (2012); *see also id.* § 76-10-500(1) ("Except as specifically provided by state law, a citizen of the United States or a lawfully admitted alien shall not be . . . prohibited from owning, possessing, purchasing, selling, transferring, transporting, or keeping any firearm at his place of residence, property, business, or in any vehicle lawfully in his possession or lawfully under his control . . . ."). The meaning of a "person's property" is not so plain, however, and the statute offers no definition applicable in this situation.

¶41     Real property in the possessive context, i.e., carrying a firearm "on the person's property," implies that the person must have ownership of the land in order to benefit from the statute's exemption. "Ownership" of real estate is not always a simple yes or no proposition, but rather describes "a collection of rights to possess, to use and to enjoy property, including the right to sell and transmit it. The term owner is often used to characterize the possessor of an interest less than that of absolute ownership, such as a tenant for life." *Jeffs v. Stubbs*, 970 P.2d 1234, 1241–42 (Utah 1998) (quotation simplified); *see also Property*, Black's Law Dictionary (10th ed. 2014) (defining property as a collection of "rights in a valued resource such as land," which are collectively described as a "bundle of rights"). A person with a fee simple interest in land—one who holds the whole bundle of rights—may indeed argue, likely successfully, that the statute does not criminalize the possession of a concealed firearm while on his or her property. But this does not describe Defendant's circumstances.

¶42 Defendant argues that she was "a temporary resident of the apartment complex" and she therefore "had the right to use the courtyard to the exclusion of others." She testified that she did not live in Boyfriend's apartment but stayed there occasionally. From this evidence, the jury could infer that Defendant is not the fee simple owner of the grassy common area, and that she is not a renter. *See, e.g.*, Utah Code Ann. § 57-22-2(1), (4), (5) (Supp. 2018) (defining "owner," "renter," and "residential rental unit" as those terms are used in the Utah Fit Premises Act). Moreover, Defendant testified that she did not live in the apartment unit and—prior to her arrest—she had been visiting Boyfriend at his apartment for a day or two. Even assuming, without deciding, that owners of condominiums and apartment-rental tenants who have signed a lease have at least a fractional property interest in the common area, Defendant falls outside of even these categories. Under the circumstances presented here, Defendant has no conceivable ownership interest in the common area of this apartment complex, and therefore the common area cannot be said to be Defendant's "property." And the concealed firearm statute therefore forbids her from carrying a concealed firearm in the common area of this apartment complex.

¶43 Here, as a threshold matter, the jury heard sufficient evidence to determine, beyond a reasonable doubt, that Defendant carried a concealed firearm while not on "her property." Accordingly, we affirm the trial court's denial of Defendant's motion for a directed verdict on this count.

## IV. Cumulative Error

¶44 Defendant asserts that the cumulative effect of the alleged errors undermines confidence in the jury's verdict. Considering all alleged errors, and any we assume may have occurred, we "reverse only if the cumulative effect of the several errors undermines our confidence" that Defendant has received a fair

trial. *See State v. King*, 2010 UT App 396, ¶ 17, 248 P.3d 984 (quotation simplified). "But if the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine will not be applied." *State v. Maestas*, 2012 UT 46, ¶ 363, 299 P.3d 892 (quotation simplified).

¶45 We agree with Defendant that one error occurred at trial—the court should have provided the innocent-possession defense jury instruction on her drug possession charge, and thus we reverse that conviction. Because we have identified no other errors, the doctrine does not apply. *See State v. Beverly*, 2018 UT 60, ¶ 80 ("[T]he cumulative-error doctrine has no application when only a single error has been determined or assumed on appeal."); *see also ConocoPhillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 31, 397 P.3d 772.

CONCLUSION

¶46 The trial court erred when it refused to provide the jury with an innocent-possession instruction regarding Defendant's possession of a controlled substance. However, the trial court did not err when it denied Defendant's request for a compulsion defense instruction for her possession of drugs or for her possession of a loaded, concealed firearm. The trial court did not exceed its discretion when it overruled Defendant's hearsay objections to testimony from officers that they responded to a call of a woman with a gun. We are not persuaded that the court erred when it denied Defendant's motion for a directed verdict on the concealed firearm charge. We lastly conclude that the cumulative error doctrine does not apply because we have identified only one error in the proceedings below. We reverse Defendant's conviction for possession of a controlled substance and remand for a new trial on that charge and otherwise affirm.

_____